JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Shane Mathews | The Guthrie Clinic aka Guthrie Robert : Packer Hospital; |

**(b)** County of Residence of First Listed Plaintiff  Amherst County
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant  Bradford County
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Kelsey Gaynier, Esquire, Chaiken, Lyons & Gaynier, 1800 JFK Blvd., Ste. 810, Philadelphia, PA 19103 (215) 564-1800

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1  U.S. Government Plaintiff
- [ ] 3  Federal Question *(U.S. Government Not a Party)*
- [ ] 2  U.S. Government Defendant
- [X] 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [X] 4 |
| Citizen of Another State | [X] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | | | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | **PERSONAL INJURY** | **INTELLECTUAL PROPERTY RIGHTS** | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | [ ] 365 Personal Injury - Product Liability | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | [ ] 368 Asbestos Personal Injury Product Liability | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 460 Deportation |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | **PERSONAL PROPERTY** | [ ] 840 Trademark | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 370 Other Fraud | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 371 Truth in Lending | | [ ] 485 Telephone Consumer Protection Act |
| [ ] 195 Contract Product Liability | [X] 362 Personal Injury - Medical Malpractice | [ ] 380 Other Personal Property Damage | **SOCIAL SECURITY** | [ ] 490 Cable/Sat TV |
| [ ] 196 Franchise | | [ ] 385 Property Damage Product Liability | [ ] 861 HIA (1395ff) | [ ] 850 Securities/Commodities/ Exchange |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 862 Black Lung (923) | [ ] 890 Other Statutory Actions |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | [ ] 863 DIWC/DIWW (405(g)) | [ ] 891 Agricultural Acts |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | [ ] 864 SSID Title XVI | [ ] 893 Environmental Matters |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment | [ ] 510 Motions to Vacate Sentence | [ ] 865 RSI (405(g)) | [ ] 895 Freedom of Information Act |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | **FEDERAL TAX SUITS** | [ ] 896 Arbitration |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 950 Constitutionality of State Statutes |
| | [ ] 448 Education | [ ] 540 Mandamus & Other | | |
| | | [ ] 550 Civil Rights | | |
| | | [ ] 555 Prison Condition | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | |

**LABOR**
[ ] 710 Fair Labor Standards Act
[ ] 720 Labor/Management Relations
[ ] 740 Railway Labor Act
[ ] 751 Family and Medical Leave Act
[ ] 790 Other Labor Litigation
[ ] 791 Employee Retirement Income Security Act

**IMMIGRATION**
[ ] 462 Naturalization Application
[ ] 465 Other Immigration Actions

## V. ORIGIN *(Place an "X" in One Box Only)*

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. Section 1332

Brief description of cause:
Medical Malpractice

## VII. REQUESTED IN COMPLAINT:

[ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ $15,000,000

CHECK YES only if demanded in complaint:
JURY DEMAND: [X] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*  JUDGE _____  DOCKET NUMBER _____

DATE
May 19, 2026

SIGNATURE OF ATTORNEY OF RECORD
*[signature]*

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**

Place of Accident, Incident, or Transaction: 31 Guthrie Square, Sayre, PA 18840

---

***RELATED CASE IF ANY:*** Case Number:_____ Judge:_____

1. Does this case involve property included in an earlier numbered suit?  Yes ☐

2. Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit?  Yes ☐

3. Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit?  Yes ☐

4. Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual?  Yes ☐

5. Is this case related to an earlier numbered suit even though none of the above categories apply? If yes, attach an explanation.  Yes ☐

I certify that, to the best of my knowledge and belief, the within case ☐ **is** / ☐ **is not** related to any pending or previously terminated action in this court.

---

**Civil Litigation Categories**

A. *Federal Question Cases:*

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts)
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Wage and Hour Class Action/Collective Action
☐ 6. Patent
☐ 7. Copyright/Trademark
☐ 8. Employment
☐ 9. Labor-Management Relations
☐ 10. Civil Rights
☐ 11. Habeas Corpus
☐ 12. Securities Cases
☐ 13. Social Security Review Cases
☐ 14. Qui Tam Cases
☐ 15. Cases Seeking Systemic Relief ***see certification below***
☐ 16. All Other Federal Question Cases. *(Please specify)*:_____

B. *Diversity Jurisdiction Cases:*

☐ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury *(Please specify)*:_____
☐ 7. Products Liability
☒ 8. All Other Diversity Cases: *(Please specify)* 362_____
    _____

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☐ **does not** have implications beyond the parties before the court and ☐ **does** / ☐ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

---

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

☒ Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☐ None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

## IN THE UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Shane Mathews | : | CIVIL ACTION |
| | : | |
| | : | NO.: |
| **Plaintiff** | : | |
| v. | : | **JURY TRIAL DEMANDED** |
| | : | |
| **The Guthrie Clinic aka Guthrie Robert** | : | |
| **Packer Hospital; Dr. Shaya Shahsavarani** | : | |
| **Dr. Christopher Berry; Dr. Dana I** | : | |
| **LaVanture; Dr. Abraham Theodore** | : | |
| **Appleton; Dr. Adam Nasar; Guthrie Big** | : | |
| **Flats Orthopedics aka aka Guthrie Big** | : | |
| **Flats Specialties and Rehabilitation** | : | |
| **Services; ABC Corporations A-Z, John** | : | |
| **Does A-Z (fictitious names of persons or** | : | |
| **entities whose identities are presently** | : | |
| **unknown)** | : | |
| | : | |
| **Defendants** | : | |

## CIVIL ACTION  COMPLAINT

AND NOW, comes Plaintiff, Shane Mathews, by and through his undersigned counsel,

Kelsey Gaynier, Esquire, of Chaiken, Lyons & Gaynier, P.C., and hereby files the following

Complaint, and therefore avers as follows:

## PARTIES

1. Plaintiff, Shane Mathews, is an adult individual residing at 145 Archie Drive in Madison

    Heights, VA 24572.

2. Defendant, The Guthrie Clinic aka Guthrie Robert Packer Hospital (hereinafter "Guthrie"),

    was at all times material hereto and upon information and belief, a business entity,

    partnership, corporation, medical health care facility, and/or other legal entity,

1

organized, operating and existing under and by virtue of the laws of the Commonwealth of Pennsylvania, with a medical center and a primary business address of located at 31 Guthrie Square in Sayre, PA 18840.

3. At all times hereinafter mentioned, Defendant Guthrie, had a duty to exercise reasonable care, in accordance with the standards of its profession, and either actually or impliedly represented to Plaintiff herein that through its doctors, residents, physician assistants, nurses, technicians, medical staff, agents, servants and employees that it would exercise the degree of care, skill, diligence, and proficiency which would conform to the reasonable standards and accepted practices of its profession.

4. At all relevant times, Defendant Guthrie held itself out in the community as being a full-service hospital and medical care institution for the provision of primary, emergency and surgical care, properly equipped and staffed and rendering quality medical care through its departments, medical groups, staff members and other actual and/or ostensible agents, servants and employees.

5. At all times relevant hereto, Guthrie was acting independently, and by and through its authorized doctors, residents, physician assistants, nurses, technicians, medical staff, agents, servants and employees including Defendants Dr. Shaya Shahsavarani (orthopedic surgery resident); Dr. Christopher Berry (attending emergency room physician); and Dr. Dana I LaVanture (orthopedic attending physician) who were under the direct control and supervision of the Defendant Guthrie and were acting within the course and scope of their employment and/or authority and within the usual course of said Defendant's business.

6. Defendant, Dr. Shaya Shahsavarani is an adult individual and citizen and resident of the Commonwealth of Pennsylvania, with an office and place of business located at

2

31 Guthrie Square in Sayre, PA 18840. Plaintiff is asserting a professional liability claim against this Defendant.

7. At all relevant times, Dr. Shaya Shahsavarani was engaged in the practice of medicine, pursuing the specialty of orthopedic surgery medicine, and was obliged to bring to the practice of him profession the professional skill, knowledge and experience which he possessed or was obliged to possess, and to pursue his profession in accordance with reasonably safe and acceptable standards of medicine, in general, and orthopedic and surgical medicine, in particular.

8. At all relevant times, Dr. Shaya Shahsavarani was a resident, surgeon, doctor, employee, servant, agent and/or ostensible agent of Defendant Guthrie which is vicariously liable for Dr. Shaya Shahsavarani's negligence as detailed below.

9. Defendant, Dr. Christopher Berry is an adult individual and citizen and resident of the Commonwealth of Pennsylvania, with an office and place of business located at 31 Guthrie Square in Sayre, PA 18840. Plaintiff is asserting a professional liability claim against this Defendant.

10. At all relevant times, Dr. Christopher Berry was engaged in the practice of medicine, pursuing the specialty of emergency medicine, and was obliged to bring to the practice of him profession the professional skill, knowledge and experience which he possessed or was obliged to possess, and to pursue his profession in accordance with reasonably safe and acceptable standards of medicine, in general, and emergency medicine, in particular.

11. At all relevant times, Dr. Christopher Berry was an attending, doctor, employee, servant, agent and/or ostensible agent of Defendant Guthrie which is vicariously liable for Dr. Christopher Berry's negligence as detailed below.

3

12. Defendant, Dr. Dana I LaVanture is an adult individual and citizen and resident of the Commonwealth of Pennsylvania, with an office and place of business located at 31 Guthrie Square in Sayre, PA 18840. Plaintiff is asserting a professional liability claim against this Defendant.

13. At all relevant times, Dr. Dana I LaVanture was engaged in the practice of medicine, pursuing the specialty of orthopedic medicine, and was obliged to bring to the practice of her profession the professional skill, knowledge and experience which she possessed or was obliged to possess, and to pursue her profession in accordance with reasonably safe and acceptable standards of medicine, in general, and orthopedic, in particular.

14. At all relevant times, Dr. Dana I LaVanture was an attending, surgeon, doctor, employee, servant, agent and/or ostensible agent of Defendant Guthrie which is vicariously liable for Dr. Dana I LaVanture's negligence as detailed below.

15. Defendant, Guthrie Big Flats Orthopedics aka Guthrie Big Flats Specialties and Rehabilitation Services (hereinafter "Big Flats") was at all times material hereto and upon information and belief, a business entity, partnership, corporation, medical health care facility, and/or other legal entity, organized, operating and existing under and by virtue of the laws of the Commonwealth of New York, with a medical center and a primary business address of located at 33344 Chambers Rd. in Horseheads, NY 14845.

16. At all times hereinafter mentioned, Defendant Big Flats, had a duty to exercise reasonable care, in accordance with the standards of its profession, and either actually or impliedly represented to Plaintiff herein that through its employees/agents including Defendant Dr. Nassar that it would exercise the degree of care, skill, diligence, and proficiency which would conform to the reasonable standards and

4

accepted practices of its profession.

17. At all relevant times, Defendant Big Flats held itself out in the community as being a full-service hospital and medical care institution for the provision of primary care and orthopedic care, properly equipped and staffed and rendering quality medical care through its departments, medical groups, staff members and other actual and/or ostensible agents, servants and employees

18. At all times relevant hereto, Big Flats was acting independently, and by and through its authorized doctors, residents, physician assistants, nurses, technicians, medical staff, agents, servants and employees including Defendant Dr. Nassar who were under the direct control and supervision of the Defendant Guthrie and were acting within the course and scope of their employment and/or authority and within the usual course of said Defendant's business, including Defendants Dr. Adam Nasar.

19. Defendant, Dr. Adam Nasar, is a physician and adult individual whose primary practice is located at Guthrie Big Flats Orthopedics, 3344 Chambers Rd. in Horseheads, NY 14845.

20. At all relevant times, Dr. Adam Nasar was engaged in the practice of medicine, pursuing the specialty of orthopedic surgery, and was obliged to bring to the practice of his profession the professional skill, knowledge and experience which he possessed or was obliged to possess, and to pursue his profession in accordance with reasonably safe and acceptable standards of medicine, in general, and orthopedic medicine, in particular.

21. At all relevant times, Dr. Adam Nasar was a surgeon, employee, servant, agent and/or ostensible agent of Defendant Guthrie and Big Flats which is vicariously liable for Dr. Adam Nasar's negligence as detailed below.

5

22. At all times relevant hereto, Defendants Jane and/or John Does, 1 - 10 (fictitious names and presently unknown - hereinafter referred to as "Does"), were doctors, residents, physician assistants, nurses, technicians, medical staff, agents, servants and employees and/or other hospital and/or medical personnel, duly licensed in the State of Pennsylvania, or in some other location as yet unknown, and provided medical care to Plaintiff, herein.

23. At all times relevant hereto, Defendants Does held themselves out to the public, in general, and to Plaintiff herein, in particular, as competent and skilled in their profession.

24. At all times relevant hereto, Defendants Does had a duty to exercise reasonable care, in accordance with the standards of their respective professions, and either actually or impliedly represented to Plaintiff herein that they would exercise that degree of care, skill, diligence and proficiency which would conform to the reasonable standards and accepted practices of their respective professions.

25. At all times relevant hereto, Defendants ABC Corporations A - Z (fictitious names and presently unknown - hereinafter referred to as "Corporations"), controlled and/or operated a certain hospital and medical facilities in the State of Pennsylvania or in some other location as yet unknown, and provided medical care to Plaintiff, herein.

26. At all times relevant hereto, Defendants ABC Corporations A - Z had a duty through its employees/agents to exercise reasonable care, in accordance with the standards of each entity's respective profession, and either actually or impliedly represented to Plaintiff herein that each respective entity would exercise that degree of care, skill, diligence and proficiency which would conform to the reasonable standards and accepted practices of each respective entity's profession.

27. At all times relevant hereto, Defendants ABC Corporations A - Z actually or impliedly represented to Plaintiffs herein that, together with each respective entity's residents, agents,

6

servants, employees, associates, physicians, physician assistants, nurses, technicians, and/or other medical personnel, each would exercise that degree of care, skill, diligence, and proficiency which would conform to the reasonable standards and accepted practices of their professions.

28. At all times relevant hereto, Defendants ABC Corporations A - Z were acting independently, and by and through its authorized doctors, residents, physician assistants, nurses, technicians, medical staff, agents, servants and employees who were under the direct control and supervision of the Defendants ABC Corporations A – Z, and were acting within the course and scope of their employment and/or authority and within the usual course of said Defendant's business.

29. All Defendants Guthrie, Big Flats and ABC Corporations, and its doctors, residents, physician assistants, nurses, technicians, officers, medical staff, agents, servants and employees provided medical care and treatment to Plaintiff, and all of the alleged negligent, reckless and careless acts, omissions and occurrences, herein described, were performed by the Defendants' doctors, residents, physician assistants, nurses, technicians, officers, medical staff, agents, servants and employees during the course and scope of their agency and employment with Defendants and in furtherance of Defendants' business.

30. At all times relevant hereto it was the duty of all Defendants Guthrie, Big Flats and ABC Corporations to provide proper and adequate medical care, maintenance, facilities, staff, policies, procedures and training.

31. At all relevant times hereto, Defendants Guthrie, Big Flats and ABC Corporations had a longstanding, systematic and continuous custom, practice and/or policy of failing to provide doctors, residents, physician assistants, nurses, technicians, officers, medical staff, agents, servants and employees at its facilities with proper and adequate training.

7

32. At all relevant times hereto, Defendants Guthrie, Big Flats and ABC Corporations had a longstanding, systematic and continuous custom, practice and/or policy of failing to provide doctors, residents, physician assistants, nurses, technicians, officers, medical staff, agents, servants and employees at its facilities with proper and adequate supervision.

33. Upon information and belief, the negligent care provided to Plaintiff at Defendants Guthrie, Big Flats and ABC Corporations was due, in whole or in part, to their failure to properly train and supervise its doctors, residents, physician assistants, nurses, technicians, officers, medical staff, agents, servants and employees.

34. Defendants Guthrie, Big Flats and ABC Corporations' failure to provide adequate, capable, and knowledgeable medical and surgical staff, supervision, training, and medical services to Plaintiff caused him to develop and sustain serious injuries, including but not limited to: severe infection, medical complications, disfigurement and disabilities, paralysis of the finger, failed surgical and medical procedures, multiple subsequent surgeries, the unnecessary removal of a substantial portion of his knuckle, tissue and bone, loss of mobility and sensation to his right hand and finger, permanent nerve and tissue damage to his right hand and finger, and permanent pain and limitations to his right hand and finger.

35. Defendants Guthrie, Big Flats and ABC Corporations had actual and/or constructive knowledge that its custom, practice and/or policy of failing to provide adequate, capable, and knowledgeable medical and surgical staff, supervision, training, and medical services was a substantial factor in bringing harm to its patients, including the Plaintiff.

## JURISIDICTION AND VENUE

36. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because this matter in controversy exceeds the sum or value of $75,000 exclusive of interest and costs,

8

and it is between citizens of different States.

37. Venue is appropriate in the Middle District of Pennsylvania pursuant to 28 U.S.C. § 1391(b)(2) as a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## JURY DEMAND

38. Plaintiff, Shane Mathews, demands a trial by jury.

## FACTS COMMON TO ALL CAUSES OF ACTION

39. On or about July 30, 2024, Plaintiff Shane Mathews first presented to Arnot Ogden Medical Center on 600 Roe Ave. in Elmira, NY 14905 at approximately 4:15pm after sustaining multiple injuries including a compound open fracture of the fifth phalange that necessitated immediate surgery, antibiotic treatment and other medical procedures.

40. It was  determined that he needed specialized medical care and surgical intervention and he was transferred via ambulance to Defendant Guthrie after Defendant Guthrie and Defendant Dr. Dana I LaVanture accepted him as a patient.

41. On or about July 30, 2024 at approximately 7:50pm, Plaintiff Shane Mathews was admitted to Defendant Guthrie as a patient for medical treatment for multiple injuries including a compound fracture of the fifth phalange that necessitated emergent surgery, emergent antibiotic treatment, and other medical procedures.

42. He was assigned to Defendant Dr. Christopher Berry (attending ER physician) who first met with him at approximately 7:53pm.

43. Imaging to his right hand and finger were ordered and reviewed by Dr. Christopher Berry and orthopedic surgeon resident Dr. Shaya Shahsavarani.

9

44. Dr. Shaya Shahsavarani noted that he performed "Orthopedic Injury Treatment" to the Plaintiff

at this time which included the following notations in the medical records:

- did 10 mL lidocaine digital block
- performed copious saline washout with iodine at bedside
- repaired wound with 3-0 chromic gut
- reduced and splinted using alumiform-ulnar gutter combo, better alignment achieved on plain films
- abx prophylactically recommended to ED attending
- close follow up in hand clinic for surgical scheduling asap
- splint instructions provided
- Weightbearing status: NWB RUE

45. Notably absent from Dr. Shaya Shahsavarani's records is his excision of tissue and bone, including approximately 70% of Plaintiff's knuckle, during his "treatment" of Plaintiff's wound.

46. Dr. Dana I LaVanture was consulted and co-signed on the above procedures stating "I discussed the patient with the resident, providing indirect supervision with direct supervision available, and agree with the resident's findings, recommendations, and treatment plan."

47. Defendant Guthrie and its Defendant doctors, residents, physician assistants, nurses, technicians, officers, medical staff, agents, servants and employees including  Dr. Shaya Shahsavarani, Dr. Christopher Berry, and Dr. Dana I LaVanture also failed to administer IV antibiotics and oral antibiotics, perform a surgical wash-out of the wound and properly sterilize the contaminated wound, and perform emergent surgical and medical procedures including but not limited to formal debridement despite the open wound being macerated, showing early signs of infection, and having occurred in a grossly contaminated setting.

48. Plaintiff was discharged at approximately 11:48pm with instructions to follow-up with the hand surgery department the next day.

49. During his treatment at Defendant Guthrie Plaintiff was dependent on its doctors, residents, physician assistants, nurses, technicians, officers, medical staff, agents,

10

servants and employees, including the named Defendant Doctors to ensure that his medical treatment and attention was in accordance with acceptable medical practice.

50. At this time, Defendants Guthrie and ABC Corporations and its doctors, residents, physician assistants, nurses, technicians, officers, medical staff, agents, servants and employees, including the named Defendant Doctors failed, refused and/or neglected to perform the duties to provide reasonable and adequate health care to and for Plaintiff.

51. Upon information and belief, Defendants Guthrie and ABC Corporations and its doctors, residents, physician assistants, nurses, technicians, officers, medical staff, agents, servants and employees failed to administer IV and oral antibiotics despite the open wound being macerated, showing early signs of infection, and having occurred in a grossly contaminated setting, perform a surgical washout on Plaintiff's open and contaminated wound; grossly, recklessly, negligently and improperly removed, and allowed the removal of, a substantial portion of his knuckle, tissue and bone; and failed to perform or order the necessary emergent surgery and other medical procedures that his medical condition required causing him to develop and sustain serious injuries, including but not limited to: severe infection, medical complications, multiple subsequent surgeries, the unnecessary removal of a substantial portion of his knuckle, loss of mobility and sensation to his right hand and finger, permanent nerve and tissue damage to his right hand and finger, disfigurement and disabilities, paralysis of the finger, and permanent pain and limitations to his right hand and finger.

52. During his presentation to Defendant Guthrie, resident Dr. Shaya Shahsavarani failed to document and disclose his removal of a large portion of the Plaintiff's knuckle,

11

tissue and bone into his medical record and did not take additional x-rays or other imaging that would have documented this gross, reckless and negligent action.

53. Furthermore, Dr. Shaya Shahsavarani failed to obtain Plaintiff's informed consent when removing his knuckle, tissue and bone during the wound closure.

54. Instead, resident Dr. Shaya Shahsavarani instructed Plaintiff's parents, who were present at this time, to take photographs of the excised tissue and bone immediately after it was done which caused Plaintiff to sustain even more severe emotional distress and bodily harm.

55. Furthermore, Defendants Dr. Shaya Shahsavarani and Guthrie, and its doctors, residents, physician assistants, nurses, technicians, officers, medical staff, agents, servants and employees, including the named Defendant Doctors failed to preserve and retain the excised knuckle, tissue and bone so that it could be used for grafting or other medical and surgical procedures.

56. On or about July 31, 2024 Plaintiff presented to orthopedic surgeon Defendant Dr. Adam H Nasar and Defendant Big Flats located at 3344 Chambers Road in Horseheads, NY 14845 where it was noted "Shane A Mathews is a 18-y.o. y/o male, with a history of asthma who sustained a open right small finger proximal phalanx fracture with associated tendon injury after rolling an ATV yesterday. He was seen in the emergency room, the wound was irrigated and closed and splinted is referred for follow-up."

57. Defendant Dr. Adam H Nasar diagnosed him with an open displaced fracture of proximal phalanx of right little finger and did not schedule an open reduction internal fixation procedure until August 5, 2024 despite the wound necessitating emergent surgery and other medical procedures.

12

58. At this time, Defendant Dr. Adam H Nasar failed and/or refused to remove his dressings to properly inspect, examine and clean the Plaintiff's wound, nor did he take additional x-rays or other imaging that would have revealed the large portion of the knuckle, tissue and bone that Dr. Shaya Shahsavarani had grossly, carelessly, negligently and recklessly removed during his closure of the wound.

59. The next day on August 1, 2024, Plaintiff presented again to Guthrie Big Flats Orthopedics where it was noted that the pain to his right finger and hand was increasingly worse.

60. At this time, no IV antibiotics or oral antibiotics were administered, nor was his wound properly examined and cleaned to mitigate the spreading infection.

61. Despite the fact that it was noted that "he has severe injury to the right small finger with fracture and likely flexor tendon injury with possible nerve injury" and that his current pain medication was not effective, Plaintiff was instructed to remain in the splint until the scheduled August 5, 2024 surgery date.

62. Again, no additional x-rays were taken that would have shown the removed knuckle nor was his wound properly examined and cleaned to mitigate the spreading infection.

63. At no time during both visits to Big Flats on 7/31/24 or 8/1/24 were cultures or blood tests administered to detect and determine the scope of the worsening infection despite the open fracture occurring in a grossly contaminated setting, being macerated, and showing early signs of infection, and no IV or oral antibiotics were administered to prevent the further spread of the worsening infection.

64. At no time were the necessary emergent surgical and medical procedures performed during these two visits nor was the scheduled surgery expedited which could have

13

greatly mitigated the infection and helped to heal the wound properly and successfully.

65. On August 5, 2024 Defendant Dr. Adam H Nasar negligently performed the first surgery to Plaintiff's right finger at Defendant Guthrie's "Guthrie Robert Packer Hospital" located at 31 Guthrie Square in Sayre, PA 18840 when he improperly and negligently fused and pinned the Plaintiff's right finger, tendons, tissues and bone.

66. At this time, the operative note stated that the "wound was contaminated with dirt and debris, there was fibrinous tissue in the wound although no gross purulence, the FDS was ruptured the FDP was 40% lacerated, the digital nerve and arteries were intact, there was an oblique shaft fracture and 70% of the proximal phalanx distal joint surface was missing."

67. It was at this time that Defendant Dr. Adam H Nasar first discovered that Dr. Shaya Shahsavarani had removed approximately 70% of the Plaintiff's knuckle, tissue and bone from his finger and hand.

68. Neither Dr. Adam H Nassar or Defendant Big Flats doctors, residents, physician assistants, nurses, technicians, officers, medical staff, agents, servants and/or employees took blood tests or cultures to determine the progression of Plaintiff's infection during his presentation to them despite the open wound being macerated, showing early signs of infection, and having occurred in a grossly contaminated setting

69. At no time before the surgery performed on August 5, 2024 did Dr. Adam H Nassar or Defendant Big Flats' doctors, residents, physician assistants, nurses, technicians, officers, medical staff, agents, servants and/or employees perform additional x-rays or perform a proper examination and sterilization of the wound that would have

14

revealed the spreading infection and excision of the knuckle, bone and tissue performed at Defendant Guthrie.

70. It was not until August 11, 2024 that Plaintiff had cultures performed by another medical facility which tested positive for a chronic and worsening infection. He was immediately transferred to Wilison Medical Center (UHS) via EMS/Erway ambulance where he was admitted and treated by would care, infectious diseases, doctors, nurses and orthopedic surgeons for nine (9) days.

71. On August 20, 2024 Plaintiff was discharged from the hospital and was set up with at-home antibiotics and wound care instructions.

72. On or about August 27, 2024 x-rays were taken that showed that Plaintiff needed additional reconstructive surgery since Defendant Dr. Adam H Nasar failed to perform the first surgery correctly and properly align the bones leaving a gap within the fracture measuring approximately 0.17cm.

73. On August 29, 2024 a second reconstructive surgery was performed to his right hand and finger which was unsuccessful since there was almost no cartilage left in the knuckle.

74. By September 4, 2024, blood tests revealed that the infection was still growing.

75. Plaintiff is still undergoing additional procedures and treatments to treat his ongoing injuries and problems associated with Defendants' negligent and careless medical care.

76. Plaintiff's ongoing medical condition and complications are a direct result of the Defendants' grossly, negligent, careless, and reckless medical care and treatment.

15

## COUNT I: NEGLIGENCE AND GROSS NEGLIGENCE
## PLANTIFF AGAINST ALL DEFENDANTS

77. The paragraphs above are incorporated herein by reference.

78. On July 30, 2024 Plaintiff was transferred from Arnot Ogden Medical Center to Defendant Guthrie and its doctors, residents, nurses, agents, and medical staff who accepted him as a patient to receive emergent specialized medical care to his right hand and finger.

79. Plaintiff's medical condition, an open compound fracture of the fifth phalange in the setting of contaminated site (open soil ATV trail) necessitated immediate IV antibiotic administration, a surgical wash-out and formal debridement, emergency surgery and other medical procedures which all Defendants failed and/or refused to perform despite the open wound being macerated, showing early signs of infection, and having occurred in a grossly contaminated setting

80. Instead, Defendant Guthrie and its doctors, residents, physician assistants, nurses, technicians, officers, medical staff, agents, servants and employees including Dr. Shaya Shahsavarani performed a simple bed-side irrigation and closure of the wound without properly sterilizing the wound allowing a chronic and severe infection to form.

81. More egregiously, Dr. Shaya Shahsavarani grossly, negligently and recklessly removed a large portion of tendon and bone, including approximately 70% of the Plaintiff's knuckle, tissue and bone, while he and his parents watched and then instructed the parents to photograph and document this outrageous, gross negligent and reckless excision.

82. Dr. Shaya Shahsavarani also failed to obtain Plaintiff's informed consent when he grossly, negligently and recklessly removed approximately 70% of the Plaintiff's knuckle, tissue and bone during his closure of the wound.

83. Defendants Dr. Shaya Shahsavarani and Gutherie, and its doctors, residents, physician assistants, nurses, technicians, officers, medical staff, agents, servants and employees,

16

including the named Defendant Doctors failed to preserve and retain the excised knuckle, tissue and bone so that it could be used for grafting or other medical and surgical procedures.

84. Defendants Guthrie, and its doctors, residents, physician assistants, nurses, technicians, officers, medical staff, agents, servants and employees, including the named Defendant Doctors failed to stop or prevent Dr. Shaya Shahsavarani from grossly, negligently and recklessly removing approximately 70% of the Plaintiff's knuckle, tissue and bone during his closure of the wound.

85. Defendants Dr. Shaya Shahsavarani and Guthrie, and its doctors, residents, physician assistants, nurses, technicians, officers, medical staff, agents, servants and employees, including the named Defendant Doctors deliberately concealed and failed to document the excision of Plaintiff's knuckle, tissue and bone so that it could not be discovered in the medical records and would not be made known to his subsequent medical providers.

86. Plaintiff was then not scheduled for surgery until six (6) days later by Defendants Big Flats, Guthrie and Dr. Nasar until August 5, 2024 allowing the infection to further spread and complications from the knuckle removal and bone/tendon injury to worsen.

87. Despite presenting twice, once on 7/31/24 and again on 8/1/24 with worsening pain, Defendants Big Flats, Guthrie and Dr. Nasar failed to inspect the wound properly and take additional imaging that would have shown the knuckle and additional tendon and bone removal by Dr. Shaya Shahsavarani before it was discovered during Plaintiff's surgery on 8/5/24.

88. In fact, Dr. Nassar failed and/or refused to even remove the Plaintiff's dressings when he first presented on 7/31/24 so that the wound could be properly examined and cleaned.

89. At no time during both visits to Big Flats were cultures or blood tests administered to detect and determine the scope of the worsening infection despite the open fracture

17

being macerated, showing early signs of infection, having occurred in a grossly contaminated setting, and the Plaintiff's complaints of increasing pain.

90. It was not until 6 days later when the first operation was performed by Dr. Nasar that it was discovered that the "wound was contaminated with dirt and debris and 70% of the proximal phalanx distal joint surface was missing."

91. The August 5, 2024 surgery failed and Plaintiff has since undergone multiple surgical and medical procedures in an attempt to reconstruct his right hand and finger.

92. As a result of all Defendants' failure and/or refusal to perform emergent surgery and other medical procedures, administer oral and IV antibiotics despite the open wound being macerated, showing early signs of infection, and having occurred in a grossly contaminated setting and properly diagnose, examine, monitor, and treat Plaintiff' injuries during his multiple presentations, Plaintiff sustained severe infection, disfigurement and disabilities, paralysis of the finger, medical complications, improper and failed surgical procedures, multiple subsequent surgeries, the unnecessary removal of a substantial portion of his knuckle, loss of mobility and sensation to his right hand and finger, permanent nerve and tissue damage to his right hand and finger, and permanent pain and limitations to his right hand and finger.

93. Plaintiff's current serious and ongoing disabilities, paralysis of the finger, deficits, injuries, weakness and impairments all could and should have been prevented with proper medical care and treatment by Defendants.

94. As a direct and proximate consequence of the Defendants', individually and collectively, failure and/or refusal to properly treat Plaintiff's medical condition in a timely fashion and implement appropriate and definitive treatment and surgical care, Plaintiff unnecessarily sustained the permanent loss of 70% of his knuckle, tissue and bone and other structural damage to his right

18

hand and finger leaving him permanently disabled and disfigured.

95. Since his discharge from Defendants' care, Plaintiff has continued to undergo multiple surgical and medical treatments and procedures as prescribed and recommended by his physicians with limited success.

96. He continues to be severely disfigured and impaired and has been unable to engage in the full-time employment that he was hired to perform and held prior to the incidents described herein.

97. Plaintiff's serious and ongoing disabilities, paralysis of the finger, deficits, and limitations all could and should have been prevented with proper care and treatment by Defendants.

98. As a direct and proximate consequence of the failures, recklessness and negligence of Defendants, by and through themselves and their doctors, residents, physician assistants, nurses, technicians, officers, medical staff, agents, servants and employees, as set forth herein and below, Plaintiff unnecessarily suffered serious injuries that have left him permanently disabled and disfigured.

99. As a direct and proximate consequence of the failures, negligence and recklessness of all Defendants, by and through themselves and their doctors, residents, physician assistants, nurses, technicians, officers, medical staff, agents, servants and employees, as set forth herein and below, Plaintiff has suffered and will continue to suffer from disfigurement, disabilities, paralysis of the finger, physical and psychological impairments, physical and psychological limitations and injuries, emotional pain and suffering; emotional distress and the loss of his ability to experience life's pleasures; past, present and future medical expenses; wage loss and loss of earning capacity, and other life limitations all of which will continue indefinitely into the future.

100. As a direct and proximate consequence of the failures, negligence and recklessness of all Defendants, by and through themselves and their doctors, residents, physician assistants, nurses, technicians, officers, medical staff, agents, servants and employees, as set forth herein and

19

below, Plaintiff has been unable to properly tend to his usual daily duties, occupations, labors and leisure pursuits, and will continue to be unable to do so into the future.

101. As a direct and proximate consequence of the failures, negligence and recklessness of all Defendants, by and through themselves and their doctors, residents, physician assistants, nurses, technicians, officers, medical staff, agents, servants and employees, as set forth herein and below, Plaintiff has been obliged to expend various and diverse sums of money for items including medications, hospitalizations, surgeries, medical treatment and rehabilitation, all in an effort to treat him for the ills and injuries which he suffered and he will be obliged to continue to expend such sums into the future.

102. As a direct and proximate consequence of the failures, negligence and recklessness of all Defendants, by and through their doctors, residents, physician assistants, nurses, technicians, officers, medical staff, agents, servants and employees, as set forth herein and below, Plaintiff has suffered a loss of earnings and loss of economic earning capacity, together with the loss of benefits associated with his employment. He will continue to incur such losses into the future.

103. Plaintiffs injuries and damages as described herein are the direct result of the breach of the standard of care, recklessness, negligence, and carelessness of **Defendants Guthrie, Dr. Shaya Shahsavarani, Dr. Christopher Berry, and Dr. Dana I LaVanture,** jointly and severally, and such conduct includes but is not limited to inter alia:

   a. Inappropriately, grossly, negligently and recklessly removing tissue and bone, including 70% of Plaintiff's knuckle when irrigating and closing the wound to his right hand which is a significant deviation from standard of care;

   b. Inappropriately, grossly, negligently and recklessly removing tissue and bone, including 70% of Plaintiff's knuckle, without his consent or informed consent which is a significant deviation from standard of care;

   c. Grossly, negligently, and recklessly failing and/or refusing to maintain and preserve the excised knuckle, tissue and bone so that it could be used for grafting and other medical procedures;

   d. Committing conduct, including but not limited to, grossly, negligently and recklessly

20

excising knuckle, tissue and bone and then requesting his parents to take photographs of it in front of him, which was extreme and outrageous conduct causing severe emotional distress to Plaintiff;

e.   Allowing and/or failing to prevent the excision of the Plaintiff's knuckle, tissue and bone during his wound closure;

f.   Deliberately not documenting and concealing the excision of the knuckle, tissue and bone during the wound closure from Plaintiff's medical records  so that it would not be discovered by subsequent medical providers which is a significant deviation from standard of care;

g.   Failing to provide immediate and proper medical care for Plaintiff's open compound fracture of the fifth phalange that necessitated appropriate and emergent surgery and other medical procedures;

h.   Grossly, negligently and recklessly delaying surgery and other medical procedures that was urgently needed given the Plaintiff's injuries, condition and medical presentation;

i.   Grossly, negligently and recklessly failing and/or refusing to immediately and properly clean Plaintiff's right hand and finger to prevent further infection;

j.   Grossly, negligently and recklessly failing and/or refusing to promptly and immediately administer IV antibiotics and oral antibiotics despite the open wound being macerated, showing early signs of infection, and having occurred in a grossly contaminated setting;

k.   Grossly, negligently and recklessly failing and/or refusing to perform a surgical wash-out of the wound and properly sterilize the contaminated wound after being requested to do so by Plaintiff and his parents;

l.   Failing to recognize the signs, risks and symptoms of severe infection which led to further medical complications and significant disability;

m.   Failing to appropriately manage Plaintiff's wound to his right hand and finger including the open compound fracture of the fifth phalange;

n.   Failing to perform emergent surgery and other medical procedures including but not limited to formal debridement;

o.   Failing to perform appropriate medical treatment based the injuries to his right hand and finger;

p.   Failing to reasonably and appropriately train doctors, residents, physician assistants, nurses, technicians, officers, medical staff, agents, servants and employees, and healthcare providers regarding recognition and assessment of injuries requiring emergent surgery and other medical procedures, immediate IV and oral antibiotic administration, medical care and proper cleaning of open wounds;

21

q.  Failing to implement and/or maintain and/or execute adequate, appropriate, or reasonable systems, policies, protocols, and/or guidelines for the recognition and treatment of high risk infections and open wound fractures;

r.  Failing to implement and/or maintain and/or execute adequate, appropriate, or reasonable systems, policies, protocols, and/or guidelines for the recognition and treatment of complex fractures necessitating emergent surgical and medical care;

s.  Exhibiting behavior that is flagrant, negligent and grossly deviating from the reasonable standard of care and significantly opposite from how a reasonably careful medical practitioner would act under the circumstances; and

t.  Committing gross, reckless and negligent conduct that jeopardized the Plaintiff's health, safety and welfare to an unacceptable degree.

104. Plaintiffs injuries and damages as described herein are the direct result of the breach of the standard of care, recklessness, negligence, and/or carelessness of **Defendants Big Flats and Dr. Nasar** jointly and severally, and such conduct includes but is not limited to inter alia:

a.  Grossly, negligently and recklessly failing and/or refusing to provide immediate and proper medical care for Plaintiff's open compound fracture of the fifth phalange that necessitated appropriate and emergent surgery;

b.  Failing to immediately remove the dressings and properly inspect, examine and clean Plaintiff's right hand and finger upon his initial presentation on 7/31/25 to prevent further infection despite the open wound being macerated, showing early signs of infection, and having occurred in a grossly contaminated setting which is a significant deviation from standard of care;

c.  Grossly, negligently and recklessly delaying surgery and other medical procedures that was urgently needed given the Plaintiff's injuries, condition and medical presentation which is a significant deviation from standard of care;

d.  Failing to recognize the signs and symptoms of severe infection which led to further medical complications and significant disability;

e.  Failing to appropriately manage Plaintiff's wound to his right hand and finger including the open compound fracture of the fifth phalange;

f.  Failing to immediately admit Plaintiff to the operating room for emergent surgery to his right hand and finger including the open compound fracture of the fifth phalange;

g.  Failing to take additional x-rays and other imaging and testing before performing surgery on 8/5/24 so that the missing knuckle and other cartilage and bone was identified;

22

h.   Failing to refer Plaintiff for appropriate medical treatment based the injuries to his right hand and finger including the open compound fracture of the fifth phalange;

i.   Failing to order and perform blood tests and cultures after it was discovered that the wound was grossly contaminated during the surgical procedure to ascertain the significance of the infection;

j.   Failing to reasonably and appropriately train staff, residents, physicians, employees, agents, or healthcare providers regarding recognition and assessment of injuries requiring emergent surgery and proper cleaning of open wounds;

k.   Failing to implement and/or maintain and/or execute adequate, appropriate, or reasonable systems, policies, protocols, and/or guidelines for the recognition and treatment of high risk infections and open wound fractures;

l.   Failing to implement and/or maintain and/or execute adequate, appropriate, or reasonable systems, policies, protocols, and/or guidelines for the recognition and treatment of complex fractures necessitating emergent surgical and medical care;

m.   Exhibiting behavior that is flagrant, negligent, and grossly deviating from the reasonable standard of care and significantly opposite from how a reasonably careful medical practitioner would act under the circumstances; and

n.   Committing gross, reckless and negligent conduct that jeopardized the Plaintiff's health, safety and welfare to an unacceptable degree.

105. This case has been reviewed by appropriately qualified medical experts who find the case to be meritorious, and who have signed written Certifications, as required by the Pennsylvania Rules of Civil Procedure.

**WHEREFORE**, Plaintiff demands trial by a jury of twelve persons, judgment in his favor against Defendants, jointly and severally, and aver damages in excess of $50,000.00, exclusive of interest and costs.

### COUNT II: CORPORATE NEGLIGENCE
### PLAINTIFF AGAINST GUTHRIE, BIG FLATS AND ABC CORPORATIONS

106. The paragraphs above are incorporated herein by reference.

23

107.    At all relevant times, Defendants Guthrie, Big Flats and ABC Corporations held itself out in the community as being a full-service hospital and medical care institution for the provision of primary care and orthopedic care, properly equipped and staffed and rendering quality medical care through its departments, medical groups, staff members and other actual and/or ostensible agents, servants and employees.

108. Defendants Guthrie, Big Flats and ABC Corporations were directly and vicariously responsible for the aforementioned negligent acts and omissions of themselves and their servants, employees, principals, physicians, fellows, nurses, agents and ostensible agents including the named Defendant doctors and physician assistant, all of whom participated in or should have participated in the care of Plaintiff.

109. Defendants Guthrie, Big Flats and ABC Corporations as the master, employer, principal and ostensible principals of their own servants, employees, principals, physicians, including but not limited to the named Defendant doctors, held itself out and represented to the public and Plaintiff that it accepted, adopted, recommended and ratified the acts or omissions of its servants, employees, principals, physicians, fellows, nurses, agents and ostensible agents including but not limited to the named Defendant doctors and is therefore liable to Plaintiff under a theory of ostensible agency.

110. Defendants Guthrie, Big Flats and ABC Corporations as the master, employer, principal and ostensible principals of their own servants, employees, principals, physicians, fellows, nurses, agents and ostensible agents including but not limited to the named Defendant doctors, undertook the aforesaid care of Plaintiff with the knowledge and intention that he would rely on its opinions, training and expertise with regard to the medical care and treatment rendered to Plaintiff during the course and scope of his treatment.

111. Defendants Guthrie, Big Flats and ABC Corporations had a duty to provide Plaintiff with

24

medical care and treatment in a safe manner and in accordance with good applicable medical standards and failed to do so.

112. Defendants Guthrie, Big Flats and ABC Corporations had a duty to select and retain only competent physicians, nurses and physician assistants and failed to do so.

113. Defendants Guthrie, Big Flats and ABC Corporations had a duty to oversee all persons who practice medicine within its walls as to patient care and failed to properly and in accordance with good applicable medical standards do so.

114. Defendants Guthrie, Big Flats and ABC Corporations undertook, offered and performed, for consideration, medical services to the Plaintiff which they should have recognized as necessary for the protection of his person, health and safety and failed to exercise reasonable medical care and instead breached the standard of medical care when performing medical services to him which both increased the risk of harm to him and directly and indirectly contributed to his injuries described herein.

115. Defendants Guthrie, Big Flats and ABC Corporations had a duty to formulate, adopt and enforce adequate and standard of medical care rules and policies to ensure quality medical care and treatment for patients including the Plaintiff and failed to do so.

116. Defendants Guthrie, Big Flats and ABC Corporations had actual or constructive knowledge that their defective, improper and sub-standard of care procedures for treating grossly contaminated complex open fractures with a high risk of infection would create harm to patients including the Plaintiff but failed to correct them.

117. The corporate negligence of Defendants Guthrie, Big Flats and ABC Corporations was a substantial factor in bringing about the harm and injuries to the Plaintiff.

118. At all times material hereto, Defendants Guthrie, Big Flats and ABC Corporations were negligent and careless in inter alia:

25

a.   Holding itself out as competent to provide medical treatment to Plaintiff but failing to administer IV and oral antibiotics, perform a surgical wash-out of the open wound, and properly clean and sterilize the highly contaminated open wound upon Plaintiff's presentation despite the open wound being macerated, showing early signs of infection, and having occurred in a grossly contaminated setting;

b.   Failing to perform immediate surgery and proper medical care to the Plaintiff's hand and finger;

c.   Exhibiting behavior that significantly deviated from the ordinary standard of medical care and instead exhibited behavior that was significantly opposite from how a reasonably careful and competent medical institution would act under the circumstances;

d.   Committing conduct that jeopardized the Plaintiff's health, safety and welfare to an unacceptable degree;

e.   Providing medical care that was a significant departure from standard of care;

f.   Failing to implement and/or enforce an appropriate recording system so that the knuckle, tissue and bone removal was properly documented;

g.   Failing to prevent the knuckle, tissue and bone from being removed improperly;

h.   Failing to document the removal of the Plaintiff's knuckle, tissue and bone and concealing it from the records;

i.   Failing to preserve the excised  knuckle, tissue and bone so that it could be used for grafting and other medical purposes;

j.   Failing to use reasonable care in the maintenance of safe and adequate health care facilities,

k.   Failing to select and retain only competent physicians, residents and medical staff properly and in accordance with good applicable medical standards;

l.   Failing to properly oversee all persons who practice medicine and provide health care services as to orthopedic, surgical and emergency care and identification of associated medical conditions and in accordance with good applicable medical standards; and

m.   Failing to formulate, adopt, and enforce adequate rules and policies to ensure quality care for its patients, including patients such as Plaintiff

119.     As a direct and proximate result of the negligence of Defendants Guthrie, Big Flats

and ABC Corporations and their residents, physician assistants, nurses, doctors, employees,

agents, and ostensible agents as described throughout this Complaint, Plaintiff suffered from

26

a progressively severe and worsening infection, medical complications, disfigurement and disabilities, paralysis of the finger, improper and failed surgical procedures, multiple subsequent surgeries, the unnecessary removal of a substantial portion of his knuckle, tissue and bone, loss of mobility and sensation to his right hand and finger, permanent nerve and tissue damage to his right hand and finger, and permanent pain and limitations to his right hand and finger.

**WHEREFORE**, Plaintiff demands trial by a jury of twelve persons, judgment in his favor against Defendants, jointly and severally, and aver damages in excess of $50,000.00, exclusive of interest and costs.

## COUNT III: OSTENSIBLE AGENCY

### PLAINTIFF AGAINST DEFENDANTS GUTHRIE, BIG FLATS AND ABC CORPORATIONS

120. The paragraphs above are incorporated herein by reference.

121. Defendants Guthrie, Big Flats and ABC Corporations are directly and vicariously responsible for the aforementioned negligent acts and omissions of themselves and their own doctors, residents, nurses, physicians assistants, servants, employees, principals, fellows and ostensible agents, including but not limited to the named Defendant Doctors, all of whom participated in or should have participated in the care of Plaintiff.

122. Defendants Guthrie, Big Flats and ABC Corporations as the master, employer, principal and ostensible principals of their own doctors, residents, nurses, physicians assistants, servants, employees, principals, fellows and ostensible agents, including but not limited to the named Defendant Doctors and Physician Assistant, held itself out and represented to the public and Plaintiff that it accepted, adopted, recommended and ratified the acts or omissions of its their

27

doctors, residents, nurses, physicians assistants, servants, employees, principals, fellows and ostensible agents, and is therefore liable to Plaintiff under a theory of ostensible agency.

123. Defendants Guthrie, Big Flats and ABC Corporations as the master, employer, principal and ostensible principals of their own doctors, residents, nurses, physicians assistants, servants, employees, principals, fellows and ostensible agents, including but not limited to the named Defendant Doctors, undertook the aforesaid care of Plaintiff with the knowledge and intention that he would rely on its opinions, training and expertise with regard to the medical care and treatment rendered to Plaintiff during the course and scope of his treatment.

124. Defendants Guthrie, Big Flats and ABC Corporations as the master, employer, principal and ostensible principals of their doctors, residents, nurses, physicians assistants, servants, employees, principals, fellows and ostensible agents undertook the aforesaid care of Plaintiff with the knowledge and intention that he would rely on its opinions, training and expertise with regard to the medical care and treatment rendered to Plaintiff during the course and scope of his treatment.

125. Defendants Guthrie, Big Flats and ABC Corporations had a duty to provide Plaintiff with medical care and treatment in a safe manner and in accordance with good applicable medical standards and failed to do so.

126. At all times material hereto, Defendants Guthrie, Big Flats and ABC Corporations were negligent and careless in inter alia:

a.  Holding itself out as competent to provide medical treatment to Plaintiff but failing to administer IV and oral antibiotics, perform a surgical wash-out of the open wound, and properly clean and sterilize the highly contaminated open wound upon Plaintiff's presentation despite the open wound being macerated, showing early signs of infection, and having occurred in a grossly contaminated setting;

b.     Failing to perform immediate surgery and proper medical care to the Plaintiff's hand and finger;

28

c.      Exhibiting behavior that significantly deviated from the ordinary standard of medical care and instead exhibited behavior that was significantly opposite from how a reasonably careful and competent medical institution would act under the circumstances;

d.      Committing conduct that jeopardized the Plaintiff's health, safety and welfare to an unacceptable degree;

e.      Providing medical care that was a significant departure from standard of care;

f.      Failing to implement and/or enforce an appropriate recording system so that the knuckle, tissue and bone removal was properly documented;

g.      Failing to prevent the knuckle, tissue and bone from being removed improperly;

h.      Failing to document the removal of the Plaintiff's knuckle, tissue and bone and concealing it from the records;

i.      Failing to preserve the excised  knuckle, tissue and bone so that it could be used for grafting and other medical purposes;

j.      Failing to use reasonable care in the maintenance of safe and adequate health care facilities,

k.      Failing to select and retain only competent physicians, residents and medical staff properly and in accordance with good applicable medical standards;

l.      Failing to properly oversee all persons who practice medicine and provide health care services as to orthopedic, surgical and emergency care and identification of associated medical conditions and in accordance with good applicable medical standards; and

m.      Failing to formulate, adopt, and enforce adequate rules and policies to ensure quality care for its patients, including patients such as Plaintiff

**WHEREFORE**, Plaintiff demands trial by a jury of twelve persons, judgment in his favor against Defendants, jointly and severally, and aver damages in excess of $50,000.00, exclusive of interest and costs.

## COUNT IV: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

## PLAINTIFF AGAINST DEFENDANTS GUTHRIE AND Dr. Shaya Shahsavarani

127. The paragraphs above are incorporated herein by  reference.

128. Defendants Guthrie and Dr. Shaya Shahsavarani intended to commit, and did in fact

29

commit, outrageous and extreme conduct which caused severe emotional distress and bodily harm to the Plaintiff.

129. By rashly, grossly, negligently, and recklessly and improperly removing a substantial portion of Plaintiff's knuckle, tissue and bone while he was conscious and without his consent or informed consent, showing it to him, and then having his parent's take photographs of it in front of him, Defendants Guthrie and Dr. Shaya Shahsavarani intentionally committed conduct so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and should be regarded as atrocious, and utterly intolerable in a civilized community.

130. As a result of Defendants Guthrie and Dr. Shaya Shahsavarani's intentional and unlawful acts and physical attack onto his body and person, Plaintiff sustained severe and permanent impairments, disfigurements and injuries to his right finger and hand, the muscles, tissues, bones, nerves, and structures thereof as well as severe nervous shock; and he has suffered and will in the future suffer pain, inconvenience, depression, extreme anxiety, panic attacks, mental anguish, emotional pain, stress, distress, embarrassment, humiliation, and loss of life's pleasures, and he has been and will in the future be prevented from attending to his daily chores, usual duties, activities, and he has undergone and will in the future undergo various medical treatments and procedures, and he has incurred medical bills and will in the future incur medical bills and other expenses in an effort to effect a cure of his is injuries, and he has sustained wage loss and loss of earning capacity and all other damages flowing therefrom, all of which will be permanent.

**WHEREFORE**, Plaintiff demands trial by a jury of twelve persons, judgment in his favor against Defendants, jointly and severally, and aver damages in excess of $50,000.00, exclusive of interest and costs.

## COUNT V: ASSUALT AND BATTERY

## PLAINTIFF AGAINST DEFENDANTS GUTHRIE AND Dr. Shaya Shahsavarani

131. The paragraphs above are incorporated herein by reference.

132. Defendants Guthrie and Dr. Shaya Shahsavarani intentionally assaulted and battered the Plaintiff when cutting out a substantial portion of his knuckle, tissue and bone while he was conscious and without his consent or informed consent, showing it to him and then having his parents take photographs of it in front of him.

133. Defendants Guthrie and Dr. Shaya Shahsavarani knowingly, intentionally, and recklessly attempted to, and did indeed cause, injuries to Plaintiff.

134. Defendants Guthrie and Dr. Shaya Shahsavarani committed, and intended to commit, a harmful and offensive contact with the body of the Plaintiff by removing his knuckle, bone and tissue without his consent and informed consent.

135. As a result of Defendants Guthrie and Dr. Shaya Shahsavarani's intentional and unlawful acts and physical attack onto his body and person, Plaintiff sustained severe and permanent impairments, disfigurements and injuries to his right finger and hand, the muscles, tissues, bones, nerves, and structures thereof as well as severe nervous shock; and he has suffered and will in the future suffer pain, inconvenience, depression, extreme anxiety, panic attacks, mental anguish, emotional pain, stress, distress, embarrassment, humiliation, and loss of life's pleasures, and he has been and will in the future be prevented from attending to his daily chores, usual duties, activities, and he has undergone and will in the future undergo various medical treatments and procedures, and he has incurred medical bills and will in the future incur medical bills and other expenses in an effort to effect a cure of his is injuries, and he has sustained wage loss and loss of earning capacity and all other damages flowing

31

therefrom, all of which will be permanent.

**WHEREFORE**, Plaintiff demands trial by a jury of twelve persons, judgment in his favor against Defendants, jointly and severally, and aver damages in excess of $50,000.00, exclusive of interest and costs.

Respectfully Submitted,

**CHAIKEN, LYONS & GAYNIER, PC**

Kelsey L. Gaynier, Esquire  /s/

**KELSEY GAYNIER, ESQUIRE**
Attorney ID No. 311269
1800 JFK Boulevard, Suite 810
Philadelphia, PA 19103
215-564-1800, fax 215-564-5524
Attorney for Plaintiff

Joseph Chaiken, Esquire  /s/

**JOSEPH CHAIKEN, ESQUIRE**
Attorney ID No. 31187
1800 JFK Boulevard, Suite 810
Philadelphia, PA 19103
215-564-1800, fax 215-564-5524
Attorney for Plaintiff

Date: May 19, 2026

32

## <u>VERIFICATION</u>

I, Kelsey Gaynier, Esquire, state that I am the attorney for the Plaintiff in this action and verify that the facts upon which statements made in the foregoing pleading are based, to the best of my knowledge, information and belief, are true and correct. The undersigned understands that the statements therein are made subject to the penalties of 18 Pa. C.S. §4904 relating to unsworn falsification to authorities.

CHAIKEN, LYONS & GAYNIER

*/s/ Kelsey L. Gaynier*

_____
KELSEY L. GAYNIER, ESQUIRE

Dated: May 19, 2026

33